[No. 14889. In Bank.—September 5, 1893.]

# CHARLES TOWNSEND, RESPONDENT, *v.* J. S. BRIGGS, APPELLANT.

TRESPASS UPON WORKSHOP—INTERFERENCE WITH MACHINERY—FORCIBLE EXCLU-
SION OF INTRUDER.—Where a trespasser enters a workshop for no purpose of
business, and unlawfully and violently interferes with the machinery therein,
the case is within the rule that a man's house is his castle, and that he has the
right to defend it against an intruder with all the force reasonably necessary to
the defense, though he would be liable for the result of a brutal use of force
beyond what the occasion warranted; but in determining such a question due
allowance must be made for the difficulty which a reasonable man would have
in measuring under exciting circumstances the exact amount of force necessary.

ID.—ACTION FOR ASSAULT—INSTRUCTION NOT APPLICABLE TO EVIDENCE.—In an
action to recover damages for an alleged wrongful and malicious assault, where
it appears without conflict of evidence that the plaintiff entered the shop of
defendant without having any business there and immediately commenced in a
rude and wrongful manner unlawfully and violently to manipulate machines
therein so as to put them in danger of being destroyed or broken, whereupon
the defendant peremptorily ordered him to let the machines alone, and to leave
the premises, and threatened to pound his head if he did not go, and upon his
refusal to leave the shop, picked up a mallet and struck him upon the head, an
instruction to the jury that "before the defendant would have been authorized
to use force to remove plaintiff from his place of business he should have re-
quested plaintiff to depart" is erroneous, in assuming that the evidence left
some doubt as to whether the defendant told the plaintiff to leave before any
force was used, or in giving the jury the impression that there should have
been a request couched in some polite and mild-mannered language different
from that used by the appellant.

ID.—INJURY BY TRESPASSER AT TIME OF ASSAULT—MISLEADING INSTRUCTION—
RIGHTS OF SHOP-OWNER.—An instruction in such case that "if the jury finds
from the evidence that the plaintiff at the time of the injury complained of was
not trying to injure the defendant nor his property, then any force used against
plaintiff" was wrongful, is erroneous and misleading as tending to convey an
impression to the jury that if when the force was used the plaintiff was not
at that very moment engaged in the act of injuring the defendant's property,
the defendant had no right to use force, whereas the defendant as owner of the
shop had a right to expel plaintiff as a trespasser, when he refused to leave
after the trespass upon the machinery, and to use sufficient force to do so,
though plaintiff was not at the moment when the force was used handling the
machines or engaged in the act of injuring the defendant or his property.

ID.—DAMAGES—EXPECTATION OF PLAINTIFF'S LIFE—EVIDENCE—MORTUARY TA-
BLES—DRINKING HABITS—REBUTTAL.—In an action to recover damages for
such assault, where the plaintiff introduced in evidence, upon the question of
damage, mortuary tables showing the average expectation of life for the purpose
of proving the probable duration of his life, the defendant has a right to rebut
such evidence, by evidence tending to show that plaintiff's probable expecta-
tion of life was below the average, and it was error for the court to exclude testi-
mony offered by the defendant to show that the plaintiff had the habit of
drinking liquor to excess, or was a drunkard, and such testimony need not be
confined to the time of the injury.

APPEAL from a judgment of the Superior Court of Ventura
County, and from an order denying a new trial.

XCIX. CAL.—31

The facts are stated in the opinion of the court.

*Brosseau & Thomas,* and *Blackstock & Shepherd,* for Appellant.

*Barnes & Selby,* and *H. L. Poplin,* for Respondent.

McFARLAND, J.— After a consideration of this case upon a hearing in Bank, we are satisfied that the judgment and order denying defendant's motion for a new trial should be reversed.

This action is to recover damages for personal injuries caused by an alleged wrongful and malicious assault made by defendant upon the person of plaintiff. The jury rendered a verdict for plaintiff in the sum of nine thousand dollars, upon which judgment was entered, from which and from an order denying his motion for a new trial defendant appeals. The main question in the case was whether the appellant used unnecessary force in expelling the respondent from a building in the possession of appellant; and we think that certain instructions of the court to the jury were misleading and prejudicial to appellant.

The undisputed facts are these: Appellant and his partner Leach were in the rightful and peaceable possession of a small workshop, in which they were engaged in making and experimenting with certain machines for pitting fruits. Respondent entered the shop at a time when appellant was in an adjoining rear room, and after speaking to a young man in the shop, immediately commenced in a rude and wrongful manner to handle two of said machines with great force, and to whirl the wheels thereof and to operate said machines with great violence, so as to put them in great danger of being destroyed or broken. The noise of the whirling wheels attracted the attention of appellant who came into the shop and in a peremptory manner ordered respondent to let the machines alone and to leave the premises. Respondent replied that he had left the machines alone, but did not proceed to leave the shop. As to the details of what then immediately occurred there is some conflict of testimony; but appellant, with an oath, told respondent that if he did not leave he would pound him on the head, and respondent replied with an oath that he would like to see him pound him on the head; and appellant then picked up a

mallet and struck respondent on the head. Respondent was staggered by the blow, but rallied and advanced toward appellant, who struck him once or twice more. Respondent, either from the effect of one of the blows, or from slipping on fruit pits and skins on the floor, fell on the knife of one of the machines and was thereby seriously injured. Respondent was at the time about forty-seven or forty-eight years old, weighed one hundred and seventy pounds, and was apparently in good health. He testified that after the first blow he was dazed, and did not realize what afterwards happened. The appellant was over sixty years old, weighed one hundred and twenty-eight pounds, was in bad health and subject to hemorrhages of the lungs. He testified that he was nervous and excitable; that respondent was "fighting drunk"; that he thought respondent wanted to fight, and as he (appellant) was too old to fight respondent with his fists he thought he would pick up something that he could defend himself with.

Whether or not the business and shop of appellant were of such a character as to carry an implied invitation to the public to enter the shop for business purposes need not be determined; for it is clear that respondent did not enter for any purpose of business. He was clearly a trespasser, at least from the moment he commenced to unlawfully and violently manipulate the said machines. The case then is within the rule that a man's house is his castle, and that he has the right to defend it against an intruder with all the force reasonably necessary to the defense. Of course, in such a case, a man would be liable for the result of a brutal use of force clearly beyond what the occasion warranted; but, in determining such a question, due allowance should always be made for the difficulty which a reasonable man would have in measuring, under exciting circumstances, the exact amount of force necessary. And it is extremely important that a jury, in passing upon such a case, should not in any way be misled by an instruction of the court.

We think that the jury were misled by instructions 4 and 5 given at request of plaintiff. In instruction 5 the court told the jury that "before the defendant would have been authorized to use force to remove plaintiff from his place of business, he should have requested plaintiff to depart, and then," etc.

Now this instruction either assumes that the evidence left some doubt as to whether appellant told respondent to leave before any force was used; or else the jury were given the impression that there should have been a "request" couched in some polite and mild-mannered language different from that used by appellant. But there was no conflict at all in the evidence on the point; respondent himself testified as follows: "While I was in there Mr. Briggs came in and *ordered me out of the shop*," and then, after some conversation, "he said, 'You get out of here or I will *pound your head with a hammer*,' or something of that sort." The jury therefore may well have thought that the language used by appellant did not constitute a "request" within the meaning of the said instruction; and it is difficult to perceive what other meaning they could have attached to it. And indeed the respondent seems to insist that he was not called upon to leave because appellant had not requested him in gentler tones to do so. But whatever might be thought of appellant's language in a school of politeness, it was sufficient in a court of law if it plainly told respondent to go.

We think, also, that instruction 4 was erroneous and misleading. By that instruction the jury were told that: "If the jury finds from the evidence that the plaintiff *at the time of the injury complained of* was not trying to injure the defendant, nor his property, then any force used against plaintiff . . . . was wrongful." From this instruction the jury might well get the impression that if when the force was used the respondent was not, at that very moment, engaged in the act of injuring appellant's property, then appellant had no right to use force, and such impression would have been a wrong one. When respondent went into the room and commenced endangering appellant's property, as above stated, he became a trespasser, and appellant had a right to put him out, and to use sufficient force to do so; and the fact that at the moment when the force was used respondent was not *then* handling the machines was of no consequence.

We think, also, that the court erred in a ruling upon the admissibility of evidence in a matter affecting the amount of damages. The respondent introduced as evidence tending to prove the probable future duration of his life certain mortuary

tables, which, under the authorities, were admissible for that purpose. The witness who identified the tables was asked by appellant the question: "Can you tell what insurable persons are?" and the objection by respondent that it was not in cross-examination was properly sustained. But we think that the court erred in sustaining the objections of respondent to appellant's question to his own witnesses, as follows: "Do you know his (Townsend's) habits as to sobriety?" The mortuary tables had been introduced by respondent as evidence tending to show what was the probable expectation of life of persons of his age; these tables, as we understand it, are based upon what experience shows to be the *average* expectation of life of all persons of that age; and, therefore, in rebuttal of that evidence, appellant was entitled to prove any fact tending to show that respondent's expectation of life was *below* such average. We apprehend that an insurance company would not take the same risk upon every man of respondent's age without particular inquiry as to his condition, upon the theory that the average expectation of life of persons of his age was a certain number of years. If we assume that the tables established a *prima facie* case of respondent's expectation of life, the appellant clearly had the right to overcome that *prima facie* case by showing facts which lessened that expectation. And the fact that respondent had the habit of drinking liquor to excess, or was a drunkard, was certainly a fact proper to be proved in that connection. It is contended that the question was properly excluded because it did not refer to the time of the alleged injury, which was about two years before the trial; but we see nothing in that contention. As "habits" are not formed hurriedly, it is probable that the question would have been proper as a preliminary one, even if the inquiry should have been confined to the date of the injury; but we do not see why it should have been so confined. The mortuary tables were introduced to show what, at the time they were introduced — that is, at the time of the trial — respondent's probable expectation of life was; and any fact which, at that time, lessened that expectation was admissible. Suppose that after the date of the injury respondent had been attacked by some disease which is generally fatal, such as cancer or consumption, would not that fact have been admissible in evidence?

We see no other points necessary to be specially noticed.

The judgment and order appealed from are reversed, and the cause remanded for a new trial.

DE HAVEN, J., FITZGERALD, J., BEATTY, C. J., and HARRISON, J., concurred.

Rehearing denied.