Parker, J.
This action is brought to enjoin the collection of assessments levied upon property lying along Jackson street betweén.St. Clair street and Thirteenth street; Toledo, Ohio, for the improvement of that street. Various objections are urged to the assessments.
First, it is objected that of the amount assessed $41023 was awarded, as damages to persons owning ■ property along the street on account of the change of grade affecting their access to their property, and it is urged that this amount arising from this source is not properly chargeable against the property owners as a part of the costs and expenses of the improvement of the street.
The statute expressly provides that this shall be included in the amount assessed, it being section 2284, Revised Statutes, which reads as follows :
‘‘The cost of any improvement contemplated in this chapter shall include the purchase money of real estate, or any interest therein, when the same has been acquired by purchase, or the value thereof as found by the jury, where the same has been appropriated, the costs and expenses of the proceeding, the damages assessed in favor of any owner of adjoining lands and interest thereon, the costs and expenses of the assessment, the expense of the preliminary and other surveys, and of printing, *36 publishing the notices and ordinances required, including notice of assessment,” etc.
• ’ Bur it is said that to the extent that thi§ statute provides fof the assessing of the costs the property acquired for the street or the damages to the property along the street, it is unconstitutional. Whether the cost of the land acquired for the street improvement might be included in the amount to be assessed, or whether the street improvement might be assessed back upon thé parts remaining of the property belonging to the persons from whom the property was acquired, is a subject which has given rise to a great deal of controversy in this state, but ever since the decision of Cleveland v. Wick, 18 Ohio St., 304, that is, from that time on until the decision of the Cincinnati L. & N. Railway v. Cincinnati, 62 Ohio St., 465, it was held that such cost might be lawfully included in the amount to be assessed; but by the decision of the case last mentioned, Cleveland v. Wick, supra, was overruled and it is distinctly held that such cost of property acquired for this' purpose may not be assessed back. I will not take time to pursue the reasoning of the supreme court upon the subject; it is entirely unnecessary. The profession generally are pretty.well acquainted with that decision and appreciate the importance of it and have, doubtless, read and studied it, and the only question here is. whether damages to property abutting upon a street resulting from a change of grade, stand upon the same footing. We are of the opinion that such damages do stand upon the same footing.
In the case of Town Council v. Joseph McComb, 18 Ohio, 229, which was an action for damages resulting from a change of grade, this language is used by the court:
“But when the public interest requires the sacrifice of private property, a very clear principle of justice requires also a compensation, to be given for the injury.
“The judgment which we are reviewing sanct'ons that principle, and give's the compensation. It is not without support from that section in the constitution of the state, which holds private property inviolate, but subservient to the public welfare, provided compensation be made to the owner.”
And there is some further discussion of the matter along that line, showing that the supreme court at that time entertained *37 the opinion that thus affecting private property to its detrimént and the damage of the owner amounted to a taking of private' property.
In Crawford v. Delaware, 7 Ohio St., 460, which was óf the' same character, it is said by Judge Swan, in the course1 of the opinion: . .
“The principle decided by the Akron case was this: where a: building is erected upon a lot, with a view to. the grade and level< of the street, and a corporation undertakes to alter the gradé,, and dig down the street, so as to materially impair the value-of the erection, the corporation is liable for damages, notwithstanding the legislature has vested in the corporat'on the power' so exercised, and although reasonable care was taken by the corporation to prevent injury. , ,
“The Akron case recognizes a private right in a lot owner, to the use of a street abutting on his lot, where he has :made erections with a view to the established grade of the street; and for which right, if materially invaded by a new grade, made under legislative authority, there exists a constitutional obli-. gation to make compensation, so far as such right is materially injured or impaired.” . ■
And again, on page 469:
“Distinct from the right of the public to use a street, is the > right and interest of the owners of lots adjacent. The latter-have a peculiar interest in the street, which neither the local |- nor the general public can pretend to claim; a private right of the nature of an incorporated hereditament, attached, to their contiguous grounds, and the erections thereon; an incidental, title to certain facilities and franchises, assured to them by contracts and by law, and without which their property .would be comparatively of little value. This easement, appendant to ' the lots, unlike any right of one lot owner in the lot of another,. is as much propérty as the lot itself.”
And on page 471:
“It is as positive and substantial an injury to private property and as direct an invasion of private right, incident to a lot, as if the erections upon the lot were taken for public use. Tt comes not within the letter, but manifestly within the spirit of the provision of the constitution which requires compensation for property taken for public use.”
*38 ' And in Cincinnati &S. G. Street Ry. v. Cumminsville, 14 Ohio St., 523, the same doctrine is approved. I will not take time to read more than a short paragraph. After quoting from Crawford v. Delaware, supra, a part of which I have just read, this is added:
“Upon a doctrine so just, and necessary, and resting upon foundations so solid and satisfactory, it can matter very little, that our conclusions are not concurred in by the courts of some of our sister states.. It is nevertheless, the law of this state, and no longer open to doubt or question.”
Rut, -it is contended by the city that the plaintiffs are estopped from raising this question. The precise language of the pleading upon that subject is :
“These defendants further say that the plaintiffs herein and each of them had knowledge that the said defendant, the city of Toledo, and its officers, were making said improvement upon the faith that the cost thereof including the awards lor damages to the owners ot abutting property and the expenses attending the same, was to be paid by the abutting property owners, and that an assessment for that purpose upon the said abutting property was contemplated by the said city of Toledo, and that ail of the property abutting upon said Jackson street between the said points was especially benefited by the construction and making of said improvement over and above the benefits derived therfefrom by the citizens 0+ the city of Toledo generally; that said plaintiffs and each of them wholly failed to take any active means to prevent the construction of said improvement in pursuance of said petition and legislation, and wfiolly failed to apply to a court of competent jurisdiction to restrain the said city of Toledo, 'its officers and agents, from constructing said improvement, and wholly failed to object by dny proper and sufficient manner or means to the making of such improvement at or before the time of the making of the same.”
All this is denied by the reply, and the evidence upon the subject is not sufficient to satisfy us that these property owners were so far aware of the fact that the city was proceeding upon the faith of former decisions of the supreme court with respect to this law, as to be estopped from asserting this ob *39 jection to the assessment. No special law or rule is invoked, as was the case in State v. Mitchell, 31 Ohio St., 592, and in Tone v. Columbus, 39 Ohio St., 281, in which cases it was held that parties who had been active in procuring the enactment •of a law and then in procuring an improvement to be made in •pursuance of the law, were estopped notwithstanding the law turned out to be unconstitutional.
The petitions produced here are under the general law. There is a single provision of that law that, under tin's recent decision ■of the supreme court, is held to be unconstitutional. The case is, on principle, we think more like the case of Birdseye v. Clyde, 61 Ohio St., 27, and we think the presumption should be indulged and is controlling, that what the parties asked for at the hands of the council was that they should proceeed undei valid laws and proceed according to law to make this improvement and the assessment. The result of our views upon this branch of the case is, that there must be a re-assessment; this assessment must set aside and a new one made under the statute, sections 229Ó and 2291, Revised Statutes.
It is also objected that $34.50 added to the amount of the assessment for the use of a steam roller, should not have been' added. It appears that the contractor agreed to do this work for a certain stipulated sum, and that the city agreed for'a certain amount per day, to furnish a steam roller that he might use upon the work. It is said that this steam roller having been furnished by the city, its use should be paid for out of the general fund; but, in our opinion, that was a part of the work that devolved upon the contractor; the ‘city was not bound to do it; the city furnished this roller precisely as any private person being the owner of it, might furnish it for hire. The roller was actually furnished to the contractor for hire, and this amount should not be deducted.
It is also objected that some parts of the fees of the mayor’s clerk for service of notices, is in excess of the amount allowed by law. In looking into the matter, we find $2.50 charged fof notices served upon non-residents by letter, to which it does not appear that the mayor’s clerk was entitled, and therefore it should be omitted. If there were nothing else in the case, we would probably pass it by and not order a re-assessment *40 on account oí this $2.50; but, since there must be a re-assessment, it may as well be included with the amount to be omitted.
The fourth and fifth objections are, that the whole assessment is invalid because the contract provided that the contract- or should repair the street or keep the street in repair for a period of five years after it was finished, and that ten per cent, of the amount to be paid to him under the contract was withheld'in order to enforce its completion and repair upon his part. It is said that that renders the whole assessment invalid, for the reason that the repair of the street was not a part of the improvement petitioned for and that, f it does not result in making the whole assessment invalid, at least this ten per cent, should he held not a proper part of the assessment, and that to that extent the assessment is invalid.
In support of this contention a number of authorities have been cited by counsel for the plaintiff, decisions of the courts of the states of Washington, California, Kentucky, Wisconsin, Oregon and thé supreme court of New York, and the reasoning of the courts in which it is held that an assessment including a charge of this character is invalid, runs along a line indicated by the extract that I shall read from the case of Boyd v. Milwaukee, 92 Wis., 456.
“Neither upon principle nor authority can such an assessment be supported where, as here, the corporate charter requires the expense of repairing streets to be paid out of general funds. It will not do to say that these agreements to repair are in effect but guaranties of material and workmanship. Such a contention is made here, and an affidavit was introduced showing that the life of such pavement (if properly laid) was at least ten years, and' that it would require no repairs at all for five years. If the agreements to repair were confined to repairs made necessary by defective workmanship or material, the argument would be entitled to serious consideration. But they go further. They cover, in terms, everything that may happen to the pavement, except the cutting through it for the purpose of laying certain pipes. Just how far these agreements might go in case of damage to the pavement from unusual causesj it is not necessary to consider, nor is the question properly here. It is sufficient to say that it is very evident that no one in *41 possession of good business sense will make such a contract without considering and charging for the very extended liability which he assumes of keeping the pavement in repair for five years, and thus the property owner is compelled to pay for that which the law charges upon the ward in general. We shall not strain the language of the contract or of the law for the sake of holding a special assessment of this nature valid. All such assessments are harsh proceedings at the best, and it is a salutary rule which holds the authorities making them quite strictly to the terms of the law.”
In the case at bar the contract provides as follows:
‘'Section B. Said party of the second part further agrees that for the. period of five years from the date of the acceptance by the common council, he will keep in good order and repair all the work done under this contract (excepting only such part or parts of the work as way have been disturbed, after the final acceptance of the same, by the laying and repairing of sewers, drains, gas, water, or service pipe or other work authorized by said common council), and that whenever directed by said common council, after notice to be served in either of the modes specified above in Clause A hereof, he will at once proceed to make the repairs as thus directed.”
And section C provides for the withholding of this ten per cent, for five years after the completion of the pavement, and the expenditure of so much of it as may be necessary for the making of these repairs if the contractor fails to make them, and it also provides that if he does his whole duty and it is not necessary to use this fund, he shall receive four per cent, upon it while’it is withheld by the city.
Now we are of opinion that a fair construction of the contract would not require the contractor to do anything more in the way of repair on the street, or the keeping of it in repair, than to correct any defects of construction or materials; that is to say, make good any work that he may have done under his contract; that if, for instance, there were some such movement of the earth’s crust, as might result from-an earthquake, which should break this street all up, we do not think any court in Christendom would hold that under the provisions of this contract the contractor would be required to make the street good. i
*42 There is another line of decisions holding the contrary view, and these decisions are found in Missouri, New Jersey, Illinois and Iowa, and the reasoning- in these cases is, according to our view, more consistent, not only with the interests of the parties along the streets who pay for these streets, but more consistent with the interests of the city. Too many restrictions and safeguards cannot be provided to require contractors to fulfill in a reasonable and honest manner their engagements in the making of these public improvements, and according to our view these stipulations as to the ten per cent, stand upon that ground; it is as if the contractor had been required to give a bond that he would keep the street in good condition for five years after having guaranteed that it would last five years. I read a paragraph from Barber Asphalt Paving Co. v. Ullman, 137 Mo. 543, which is a Missouri case:
“The agreements of the plaintiff, the asphalt company, in regard to maintaining- the street in repair for five years, free of cost to the city, apply only to 'the pavement constructed under these specifications.’ If other repairs become necessary, on account of the construction of sewers, laying of pipes or other disturbances of the asphaltum street surface, under permits of the city, those repairs are to be paid for by the city, not by the adjacent property owners, at a price not to exceed' the original cost per yard, according to the contract. The validity of those provisions as to the city is a topic regarding which we shall more fully state our position in the next paragraph of this opinion. It is enough at the moment to say that the stipulations as to such repairs on account of the city, at prices to be paid in future, do not appear to impose on the property owners any charge for such repairs as part of the primary cost of the asphaltum street. The guaranty of.the pavement for five years, as laid by the plaintiff, involves no extra charge against the adjoining property, further than would be justly payable for a lasting pavement. The term for keeping the agreed work in repair free of cost is no longer than the reasonable period such work should last if properly done at the outset.”
And that is so here. According to the '.dence, if this pavement were laid in a reasonable manner, is provided fofi in the contract, it would last five years.
*43 “It certainly is proper for the city to require of the contractor for such improvements a sound and durable piece of' finished work. The agreement to maintain tne work free oí cost for five years is, so far as this record shows, nothing, more than a guaranty that the work shall be of that character.
“The learned dissenting members of the court consider that the contract imposes upon the taxable property some part of the after repairs, payable properly by the city. They have quoted some part of the contract to support their views. The passages from which the quotations are taken appear at large in the statement accompanying this opinion, as well as considerable context, which, also should not be- lost sight of. The paramount issue is upon the construction of thá¡ contract taken as a whole. Does it mean to provide that thd paving company shall keep the entire street in repair for five years, or does it mean to provide that the company shall simply maintain, in good order, for that period, the street as plaintiff agreed it should be made? We think the latter is the true meaning. The city had the right to determine whether the meaning-. The city had the right to determine whether the thoroughfare should be improved with macadam, gravel, asphaltum, granite or other material. It had the right to put down a pavement good enough to last at least five years, and to charge its cost against the adjacent property. Now, what difference is there in principle, between a municipal agreement that merely calls for the -construction of such a substantial street, and a municipal agreement which adds to such a call terms requiring- the contractor to make good, during five years, his contract to furnish the sort of pavement he proposes to supply? The proper laying cf pavements of the sort here in view is a matter of skill, ' which few but experts can fathom. An agreement to keep such a pavement good for five years, as contracted to be laid, seems to us a far more practical and efficient way of clinching the agreement for a sound article than any amount-of stipula-* tions to govern the mere construction of the street at the outset. Such a guaranty as it is aptly termed in the contract, is a prudent and business-like mode of securing what the city had a right to demand in respect of the quality of' *44 work desired. Such an agreement does not, of itself, necessarily imply an unlawful increase of the first cost of a well constructed street. Such a street is what the contradi ■before us is designed to secure. The guaranty is entirely different in principle from an agreement to keep the whole! street in repair for a term of years, irrespective of the causes which might necessitate repairs.”
And, following the decisions of the courts of Missouri, New Jersey, Illinois and Iowa upon this subject, we hold that! there is nothing in this stipulation as to the withholding of the ten per cent., nothing in the transaction, that renders' this assessment invalid.
. It is also urged that -there is a substantial defect in this work, in this, that all of that part of the street where the sidewalks should be laid was not brought up to grade, and much authority js cited in support of the contention that under this petition and contract, the contractor should have been required to build the necessary retaining walls and fill in so as to bring the street for its full width to the line of the lots, up to grade. Without stopping to consider whether or not this was required under the contract, we have simply to say that in our opinion this matter cannot be taken advantage of in an attack upon the assessment, unless fraud is alleged; we understand that it has been so held by this) court and other courts over and over again. In Stone v. Viele, 38 Ohio St., 314, to which we have been referred, it was held that where there was a substantial defect, that would render the assessment invalid. But when that case was before the court and when the improvement was petitioned for and constructed, the statute upon the subject was very different from the statute under which this improvement was made.
Judge Okcy, in delivering the opinion, on page 317, says this:
“Section 550 of the municipal code of 1869, as amended! in the revision (Revised Statutes, section 2289), provides that in an action by the city (Revised Statutes, section- 2286, 2294, 2303), to enforce an assessment, ‘a substantial defect in the construction of the improvement and shall be a complete defense/ ”
H. A. Merrill, and C. P. Watts, for Plaintiffs in Error.
’Charles S. Northup, for City of Toledo. ■
After that was said, section 2289 was amended, and in the amendment these words, “a substantial defect in the construction of the improvement shall be a complete defense,” are omitted.
• Our attention is also called to a more recent decision of the supreme court, from which it is claimed that there is an implication that the right to attack the assessment upon this ground still exists, but we think the inference to be drawn! from this amendment following this decision is so clear and unmistakable as to leave no doubt of the legislative intent, that an assessment should not be attacked or defended against upon that ground. I might say, however, that we are not satisfied that the contract was not fairly and duly performed.
I have indicated the only parts of the assessments that we think should be omitted from the new assessment and the decree will be entered in accordance . with the views expressed.

Note — O. F. Watts, for Plaintiffs in Error: The first objection to the assessment is that there is $6397.04 included therein to pay the awards and costs in probate court of the change of grade of this street and each one of the plaintiffs was awarded a portion thereof. Freeman v. Hunter, 7 Circuit, 117; Cincinnati L. M. Ry. Co. v. Cin. 62 Ohio St., 465; Davis v. Newark, 25 Atlantic Rep. 336.
The second objection is that there is included in the assessment $37.60 for the use of^the steam roller which is owned by the city and paid for out of the general fund. Longworth v. Cincinnati 34 Ohio St., 101; Spangler v. Cleveland, 35 Ohio St., 469.
The third claim is that under the ordinance of the city the mayor’s clerk is to receive 50 cents for each notice served of the passage of the resolution to make the improvement. That he charged for five notices sent by mail to non residents.
The fourth contention is that in cities of the third grade of the first class under sec. 2267 B. S., an assessment can not be made for an improvement of this kind unless petitioned for by’ a majority of the owners. The petition in this case did not ask for the keeping of the street in repair; that the resolution and ordinance for the improvement made no provision for keeping the street in repair but that when the city advertised for bids they, provided in their advertisement and in their contract thereafter made that the contractor should keep said street in repair for the period of five years after its acceptance'and that the city would retain 10 per cent, of the contract price for, that *46 purpose, which the city did retain in the sum of $2,087.00, andthe city each year makes a levy on the general tax duplicate of not less thau $50,000, for the purpose of keeping its streets in repair, thus making an assessment upon the general tax duplicate against this property for che keeping of the street in repair and also p'acing a burden especially upon this property by reason of the terms of the contract.
Claimed that if this does no invalidate the entire assessment it at least invalidates that portion of it so retained. McAllister v. Tacome, 9 Wash. 272; Paving Co. v. Leach, 34 Pac. Rep., 116; Bullit v. Selvage, 47 S. W. Rep. 255; Boyd v. Milwaukee, 92 Wis., 464; People Ex Rel. v. Maher, 63 N. Y., S. C. R., 82; Allen v. Portland, 48 Pac. Rep. 509; Brown v. Jenks, 98 Cal. 10; McDonald v. Mezes 107, Cal. 492; Spangler v. Cleveland, 35 Ohio St , 469.
The last claim is chat this assessment is void for reason that there was no substantial compliance with the contract in this —that the contractor failed to bring the sidewalk bed to grade and left the same down from six to nine feet below the pavement. Hastings v. Colorado, 42 Ohio St., 485; Longworth v. Cincinnati, 34 Ohio St., 101; Schroeder v. Overman, 18 C. C., 385.
Chas. S. Northup, for City of Toledo, Defendant in Error: 1. The 10 per cent, guaranty clause for keeping the pavement in repair is not void. Counsel for plaintiff contend that it is because the city of Toledo has' provided a street repair fund by a general levy, which is to be used for the repair of streets, and-that the cost of keeping the streets in repair can not be assessed upon the owners of abutting property. But the language of this particular contract is not for keeping the street in repair generally, but is merely an agreement guaranteeing that a pavement will be constructed of such a nature as not to require repairs for five years. It is a mere guaranty of the character of the work done. Lathen v. Wilmett, 168 Ill. 153; Osborn v. Lyons, 73 N. Western, 650.
2. As to the contention thar under C. L. & N. Ry. Co. v. Cincinnati, 62 Ohio St., 465, awards of damages arising out of change of grade can not be assessed back upon the property, the owners of which have received such awards. Sec. 226'4 R. S., prescribes the manner of making such assessments, and sec. 2284 R. S. prescribes what rnay be°included in the cost of such an improvement.
These sections are broad enough to warrant the assessments of the awards back upon the property, (662 Ohio St., 465) although they were held unconstitutional in this respect in that, decision — which overrules Cleveland v Wick, 18 Ohio St., 303, under which decision these awards might properly have been assessed upon the plaintiff’s property. But contended that all of the plaintiffs, except Mrs. Parker, the Mahons and Maguire, joined in the petition, asking for the construction of this pavement and the grading of the central 36 feet of this street to the established grade, and consented that an assessment might be levied upon their property to pay the cost and expense of the making of that improvement. They must be presumed to-have intended an assessment to be made in accordance with such contruction of the statute as had previously been determined by the court of last resort. They therefore petitionedi
*47 for the making of the improvement and consented to an assessment of the awards back upon their property as in the Wick case. The city council in reliance upon this settled construction, granted the prayer of the petitioners and in due time adopted an ordinance for the making of the improvement. It is admitted by all of the plaintiffs except Maguire that they knew of the adoption of the different items of legislation at the time they were severally adopted, and so they must have known that the ordinance for the construction of this improvement provided that the cost and expense including the award to abutting owners for damages caused by reason of the change of grade would be assessed according to benefits upon all of the property upon Jackson street between the points aforesaid. At that time the city had created no liability and had expended no money. AH of these owners then stood by and permitted the city of Toledo to expend money in pursuance of legislation instigated by the plaintiffs themselves, and knowing that the city, in reliance upon the rule as laid down in tbe Wick case was expecting and had ordained that such expenses and costs, including said awards, should be assessed upon all of said property, and plaintiffs took no active means to prevent or restrain the expenditure of such money. Under such circumstances, no matter what may be the effect of the ruling in the 62 Ohio St., the plaintiffs are estopped to insist that the city of Toledo had no power to assess such awards upon their property. The time for them to speak has gone by. Though the city of Toledo may not have had the power to make such a valid assessment, the rights between the parties became fixed by contract made by the parties, (the property owners and city), incorporated in which was the settled construction of section 2284 as laid down in the Wick case. State v. Mitchell 31 Ohio St., 592.
Tbe principles of estoppel apply where the proceedings are questioned upon the ground of the unconstitutionality of the statute under which they .are had as well as where they are sought to be impeached on other grounds. -4 Nisi Prius Rp., 203.
Therefore all of tbe plaintiffs except Maguire are estopped to deny tbe validity of this assessment. Inasmuch as Maguire did not petition for this improvement and it does not appear that he had any knowledge of the legislation at the time when the different steps were taken, the question presents itself whether these awards can be assessed back upon the property. That point was expressly decided by thiB court in the case of Freeman v. Hunter, 7 Ohio Cir. Ct. Rep. 117 against our contention, but the supreme court disposed of the case on other grounds. The assessment being warranted under tbe rule in the Wick case and the supreme court in the 62 Ohio St.,having to do only with awards for the value of land taken, it would seem that the rule in the Wiok case has not been interfered with so far as damages arising out of change of grade are concerned, or so far as damages that result to property by reason of the taking of other property are.concerned. Ihe case in the 62 Ohio St. is limited to awards for property taken, and it is doubtful if the supreme court would care to go further than *48 they went in the 62 Ohio St. in altering the rule heretofore established. They had full opportunity to alter that rule in the Freeman oase, supra, but did not do so.
3. The objection that there is included in the assessment the cost of the use of a steam roller owned by the city is untenable. The contractor merely rented the roller from the city, and instead of paying the city ten dollars a day, he agreed that that amount might be deducted from his contract price. No additional cost was made, and the property owners are not concerned in the place from which the contractor obtains his tools. A court of equity will not interfere to set aside an assessment where the plaintiff is not damaged.
■ 4. The objection that certain fees were oharged for serving notices, which were not actually served, is frivolous, and the amount involved is too small to invoke the aid of a court of equity.