[Civ. No. 7733. First Appellate District, Division Two.—March 13, 1931.]

EVELYN MARY PHELPS, Respondent, v. GLOYD S. ARNOLD, Appellant.

D. Chase Rich for Appellant.

James E. Fenton for Respondent.

PARKER, J., *pro tem.*—The action was commenced to recover damages alleged to have resulted to plaintiff from an assault made upon her by the defendant. The complaint characterized the assault as unprovoked and malicious and alleged numerous injuries sustained and asked damages, both compensatory and punitive. The trial was by jury and the verdict was in favor of the plaintiff in the sum of $3,500. On motion for a new trial the court below ordered a remission of the damages to the end that unless plaintiff consented to accept the sum of $750 in full satisfaction, a new trial would be ordered. Thereupon plaintiff remitted the excess and judgment was entered in her favor for the amount of $750.

520

Defendant on this appeal urges but two grounds for reversal, namely, excessive damages and error in the refusal of certain proposed instructions.

■ The rule regarding damages is well settled in this jurisdiction to the effect that the matter of damages is one which must be left almost entirely to the determination of the trial court, and that reviewing courts will not interfere unless the verdict is obviously so disproportionate to the injuries received as to justify the belief that it is not the result of cool and dispassionate discretion of the jury. (*Szasz* v. *Joyland Co.*, 84 Cal. App. 264 [257 Pac. 871].) The rule is likewise stated in *Kelley* v. *Hodge Transp. System*, 197 Cal. 598, at 610 [242 Pac. 76, 81] as follows: "Unless we are able to say that the award of damages made by the jury and sustained by the trial court was so grossly disproportionate to any compensation reasonably warranted by the facts as presented to us on appeal as to shock the sense of justice and raise at once a presumption that it was the result of passion, prejudice, or corruption, rather than an honest and sober judgment, this court may not exercise the power of revision." ■ As a corollary to the rule it would follow that where the record discloses a review of the amount assessed by the jury, in the court below, and a diminution thereof to the extent of reducing the same to approximately twenty per cent of the amount returned in the verdict, the presumption of passion, prejudice or corruption would be almost completely overcome in as far as it could affect the reduced amount. The facts of the case before us disclose a situation wherein the jury would have been warranted in assessing punitive damages and they were instructed to that effect by the trial court should they find in favor of plaintiff. In the diminution of the verdict the trial judge had the same power. Just what portion of the awarded sum is for compensatory damages and what portion as punitive damages does not appear. There being no request, either to the court or jury for such a segregation, we regard both elements of damage as entering into the total and properly so. (*Bloomberg* v. *Laventhal*, 179 Cal. 620 [178 Pac. 496].) With the foregoing in mind it becomes unnecessary to detail all of the facts of the case. There was sufficient evidence to indicate that plaintiff was forcibly and violently assaulted without provocation and

that while her damage, in so far as permanent injuries was concerned, might have been fully compensated by even a lesser amount, that was a matter within the sound discretion of the trial judge and we cannot hold that discretion to have been abused.

The next phase of the appeal involves the matter of refused instructions. A proper consideration of the question necessitates a brief review of the facts. Plaintiff and defendant resided in adjoining homes, not the same building, however. The husband of the plaintiff was an aged man, a veteran of the Civil War and retired from active work. There seems to have been the usual neighborly intercourse between the families manifested in exchange of services looking to the improvement of the properties and in other similar contacts. Both defendant and his wife displayed some little interest in the aged husband and the latter would often spend his leisure time with them. As time went on the plaintiff became somewhat resentful toward this intimacy, particularly when she became informed of the fact that her husband was making small gifts of money to the defendants. There then arose a feud between the clans. Much bickering followed and finally an open rupture. The women of the household came almost into physical encounter on the premises of defendant, on which occasion the plaintiff was ordered to remain away from the home or property of defendant. At this time plaintiff sought counsel and as a result thereof she procured advice to the effect that the earnings of the husband during coverture were community property and that the husband had no legal right to dissipate or give away these earnings without the consent of the wife. She obtained from her counsel a notice of demand for the return of the moneys alleged to have been given by her husband to the defendants and on the day of the alleged assault or the night thereof, she again visited the house of defendant to serve upon the latter the prepared notice, which, to repeat, set up the fact of community ownership, a brief *résumé* of the law, and her demand for the return of the money. This is the written demand hereinafter referred to as defendant's exhibit ''A''. It was on this occasion that the assault complained of occurred. The plaintiff's testimony, if believed, showed a violent assault. The defendant, on the other hand,

claimed that he gently led her off the premises, using some force only when and as plaintiff resisted removal and began an attack upon him. The evidence of injury offered by plaintiff was practically overcome by the testimony of her attending physicians and by other competent proof; also, for what purpose hardly discernible, it was before the jury that upon a criminal complaint against defendant he was acquitted.

With this picture of the controversy we can approach the instructions. The following instructions were offered and requested by defendant and refused:

A. "You are instructed that the paper served upon the defendant on March 11, 1927, by the plaintiff . . . is not a 'legal paper or notice', and is not such a paper or notice as the law, in any case, would require to be personally served upon the defendant."

B. "You are instructed that if you find that the plaintiff had been notified by the defendant, or his wife, prior to March 11, 1927, that the plaintiff should thereafter keep off the property of the defendant, and that the plaintiff thereafter on March 11, 1927, went upon the property of defendant for the purpose of serving the paper, defendant's exhibit 'A' upon the defendant, that such act of the plaintiff is not justified in law and was a trespass upon the property and rights of the defendant, and that the defendant, upon that occasion was justified in using reasonable physical force to eject the plaintiff from his property."

The last-quoted offered instruction practically embraced the first and therefore our discussion will be addressed to the said instruction. It is elemental that an owner of premises, such as are being discussed, to wit, his home, is justified in using reasonable force to eject trespassers. The doctrine of the law in this respect is quite fully discussed in the case of *Walker* v. *Chanslor*, 153 Cal. 118 [126 Am. St. Rep. 61, 17 L. R. A. (N. S.) 455, 94 Pac. 606], and many of the authorities, ancient and modern, are therein collated. The rule therein announced is the common-law rule that an owner has the right to forcibly eject trespassers and if the force used is not excessive, the trespasser has no personal action against the owner. The correctness of the ruling has never been questioned and now stands as the

accepted law of this jurisdiction. In the case before us it was not disputed that the alleged assault took place at the home of the defendant. Nor can it be disputed that the plaintiff, if she had been ordered or requested to remain away from the premises, particularly after unfriendly relations had been established, was a trespasser upon these premises. By no stretch of principle can it be declared that because plaintiff was presenting a written demand, theretofore repudiated, this fact made her entry of a character distinguished from trespass. The evidence discloses this same demand had been made prior to the time in question and payment refused and liability denied. There was nothing that required the presentation in writing and there was, in effect, no greater right conferred by reducing the claim to writing than if the plaintiff had renewed her oral demand. We think that plaintiff at the time in question was clearly without right and a trespasser. The invitation presumed to be extended to all that may have business at one's home does not survive when the facts disclose a condition such as here. Had there been no previous trouble between the parties the presumption of invitation might be indulged, but it never arises against the expressed disavowal thereof. The liability of the defendant therefore rested upon two questions. Was the plaintiff a trespasser and if so was the amount or degree of force used reasonable under the circumstances? Before the jury could intelligently pass upon the question of whether or not there had been an unlawful assault it must first determine the status of the parties at the time the assault is alleged to have occurred. On this point the jury had absolutely no instruction. We have carefully read the instructions that were given and we find that the only instructions on the point stated to the jury that it was the duty of the husband at all times to protect his wife, family and home from the *attack* of any person and that if the jury found there was an attack the husband might use such physical force as was reasonably necessary to eject any person as might be necessary from his home or property. This left the jury with the notion that in order to justify the use of even reasonable force in ejecting a trespasser from the home there must be an attack. No other construction can be put upon this plain language. We think that the trial court was clearly in error in refusing

to give the requested instruction. In *Townsend* v. *Briggs,* 99 Cal. 481, at 483 [34 Pac. 116, 117], it is said: "A man's house is his castle, and that he has the right to defend it against an intruder with all the force reasonably necessary to the defense. Of course, in such a case, a man would be liable for the result of a brutal use of force clearly beyond what the occasion warranted; but, in determining such a question, due allowance should always be made for the difficulty which a reasonable man would have in measuring, under exciting circumstances, the exact amount of force necessary. And it is extremely important that a jury, in passing upon such a case, should not in any way be misled by an instruction of the court." And following the same line of reasoning it is likewise extremely important that a jury should be fully instructed upon the law applicable. Here, as noted, the defense of appellant was restricted to proof of an attack. It is urged that the law requires an owner to first order or request the trespasser off the premises before any use of force is justified. This has been declared to be the law only under the circumstances present in the particular case wherein the rule is announced. In any event this rule would not affect our conclusions here, even though in a measure applicable. In the first place, the refused instruction embodies the rule in that it specifies the finding of a notice not to enter the premises before plaintiff can be held a trespasser. And further, a fair interpretation of the rule does not mean that a trespasser must be given more than one notice or request or order. After an unfriendly feeling has developed culminating in quarrel and encounter and plaintiff had then been ordered to remain away from the premises it was not a requirement that upon re-entry she should again be ordered to leave, it being apparent that her entry was hostile and in defiance of the former order. Also, the necessity of request to leave was, in a sense, embraced in the use of the term reasonable force and could by implication be read into that phase of the proffered instruction; it being manifest that a determination of the reasonableness of the force used involved question of necessity of any force whatsoever. Holding the action of the trial court error, it is obvious that such error was prejudicial. This is demonstrated by the fact that the trial court must have deemed the amount of the verdict to

have been the result of passion or prejudice. The reduction of the verdict from $3,500 to $750 clearly indicates the trial court's opinion. A mere reduction of the amount, however, is not a complete solution of the question. The defendant is entitled to a fair trial and to the jury's determination of all questions involved, including amount of damages. We do not criticise the practice of trial judges reducing the amount returned in the verdict of a jury in appropriate cases and particularly in cases where no other substantial error occurs. But we do hold that errors prejudicial to a party's cause, the effect of which is to preclude a fair and impartial hearing on the merits, cannot be cured by the reduction of the amount of damage found. There was a sharp conflict in the evidence. The question of whether or not plaintiff had suffered any actual damage was hotly contested. Her attending physician found nothing worthy of mention. The jurors who had sat on the criminal case wherein the same issue was tried within a few days after the alleged assault testified that no mention was made of injury nor was any shown nor did the physical appearance of the plaintiff indicate any of the injuries complained of.

We think that the judgment should be reversed, and it is so ordered.

Sturtevant, J., and Spence, Acting P. J., concurred.