THE COURT.
 

 The facts that are decisive of the instant case in substance appear to be that the defendant Fox West Coast Theatres had agreed with Charles Chaplin Film Corporation to the effect that for the purpose of testing the ‘ ‘ sound track” and of correcting any slight imperfections which might be detected in a “film” which theretofore had been produced by the latter, it would be “run through” at a theatre that was owned and operated by the former. By Fox West Coast Theatres it was deemed advisable, and was so stated by it to Charles Chaplin Film Corporation, that the persons who would be permitted to witness such “preshowing” would be limited to representatives of the press, and to one hundred employees of Charles Chaplin Film Corporation. Notwithstanding such direction on the part of the owner of the theatre, but in conscious disregard thereof, the publicity representative of Charles Chaplin Film Corporation, who had been told by her superior officer of that corporation “to use her own judgment” with respect to the persons who should be invited to witness the “preshowing”, at the request of one who was a radio announcer for a rival motion picture producer, extended an invitation to witness said “preshow
 
 *385
 
 ing” not only to him, to his wife and to the plaintiff, but also to a young' woman who had been invited by plaintiff to accompany him;—none of whom was within either of the classes of persons which theretofore had been designated as proposed invitees by the defendant corporation. In addition to the direct understanding of the parties regarding the limitation which thus had been placed upon the personnel of those who were to be invited on the occasion, for the purpose of checking the several invitees and of preventing uninvited persons from entering the theatre, it was also agreed that on the evening when the “film” was to be “run through”, defendant Sargent, who was the district manager of the defendant corporation, and the publicity representative of the Charles Chaplin Film Corporation would be at the entrance to the theatre where the “preshowing” was to take place. That part of the agreement was substantially executed. However, when at the appointed time plaintiff arrived at and within the “forecourt” of the theatre he was recognized by defendant Sargent and within a short time thereafter, on each of three separate occasions, emphatically was told by Sargent in effect that he would not be permitted to enter the theatre. After some conversation had occurred between the radio announcer and the publicity representative of Charles Chaplin Film Corporation, and the consequent admission of the former into the lobby of the theatre, on plaintiff’s representation to Sargent that he wished to see the radio announcer in order that he might inform him of plaintiff’s inability to witness the “preshowing” of the “film”, plaintiff was accorded leave to enter the lobby of the theatre for that purpose. According to plaintiff’s testimony, after he had thus entered the lobby of the theatre and had been therein “a second or a few minutes” (or, as testified by others, from five to ten minutes), acting under the direct order of defendant Sargent, two police officers approached plaintiff and “by the arm . . . escorted” him from the lobby of the theatre to a position in the “forecourt” thereof,— a distance of approximately thirty feet. Although in being thus ejected plaintiff suffered therefrom no asserted physical violence, yet without giving any details in connection therewith, plaintiff complained that the police officers had been “too rough”. In the course of two weeks next ensuing, plaintiff commenced the instant action, and shortly there
 
 *386
 
 after he was discharged from his employment, for the reason as given by his employer that it had been “embarrassed . . . because of this suit and the occurrence at the Chinese Theatre”.
 

 From the record herein, it appears that on the trial of the action, in answer to certain "special interrogatories that had been submitted to it, the jury found not only that the removal of plaintiff from the lobby of the theatre was not “justified”, but also that by reason of such ejectment plaintiff had sustained damage in the sum of $1,000; furthermore, that the discharge of plaintiff from his employment was a “proximate result of his ejectment”, for and on account of which his damages were fixed at $4,000. From the ensuing judgment the defendants have prosecuted the instant appeal.
 

 The foundational question in the cause, and the one that is determinative of the appeal herein is whether in the premises any actionable tort was committed by the defendant. In California Jurisprudence, volume 24, page 590, it is said, “In order to constitute an actionable tort there must be a legal duty imposed by statute or otherwise owing by the defendant to the one injured.”
 

 At the outset, it should be remembered that Fox West Coast Theatres was the owner of the theatre and that at any showing of a motion picture therein to which the public was not invited, in the absence of any release or qualification of its rights in that regard, the said defendant alone had the exclusive right to determine who should be permitted to attend.
 

 It is manifest that to the defendant Fox West Coast Theatres, as the owner and operator of a theatre at which the “film” was subsequently to be shown to the public, it was a matter of some financial importance that the audience at the “preshowing” be limited; but in the instant matter it conclusively appears that said defendant in part had surrendered its exclusive right so to decide, in that it had been agreed by it and Charles Chaplin Film Corporation that the audience would be limited to two designated classes of persons, to wit, members of the press and employees of the Charles Chaplin Film Corporation. Unquestionably, plaintiff could not qualify as a member of either of such classes; so that in line with the understanding of the parties to the agreement, in nowise was plaintiff entitled to admission
 
 *387
 
 to the theatre. Clearly if admitted at all, his admission into the theatre would have had to depend upon some understanding between the parties to the agreement other than that which originally was contemplated and agreed upon by them. In other words, in the first place Pox West Coast Theatres was in complete control. It surrendered a limited, restricted right to another which in its exercise was to be supervised jointly by an agent of the respective parties to the agreement. It would seem incontrovertible that the person to whom the restricted right was given had no power to enlarge it, or in anywise to encroach upon the absolute remaining right that was possessed by the owner of the property. Por example, if in addition to the agreement that actually was made with respect to the individuals who were to be invited, the parties thereto had stipulated that members of the white race only were to be admitted to the “preshowing” it would seem unlikely that anyone would contend that Charles Chaplin Film Corporation properly might disregard that element of the contract and as a result legally fill the theatre with persons who were members of a race other than the white race. Prom such a standpoint it would follow that even though plaintiff might have shown that as far as Charles Chaplin Film Corporation was concerned he had been an invited guest, nevertheless since plaintiff’s invitation was in excess of the authority of the Charles Chaplin Film Corporation, plaintiff’s position with reference to being entitled to admission into the theatre was that of one who had not been properly invited thereto, but that in legal effect he was a trespasser on the premises. One who is on the land of others without their consent and against their will, is a “trespasser”.
 
 (Brawn
 
 v.
 
 Boston & M. R. R.,
 
 73 N. H. 568 [64 Atl. 194].) Also, “Every wrongful entry upon land in the occupation or possession of the owner constitutes a trespass . . . ”.
 
 (Triscony
 
 v.
 
 Brandenstein,
 
 66 Cal. 514 [6 Pac. 384].)
 

 However, plaintiff contends that the “preshowing” was a “joint venture” of Pox West Coast Theatres and Charles Chaplin Film Corporation, and that as a consequence the parties thereto had equal rights with respect to the matter of issuing invitations. But even assuming (without so deciding), that such was the situation of the parties, it does not follow that plaintiff had any legal right to complain of the treatment that he received. Ordinarily it may be a
 
 *388
 
 correct statement of the law that with respect to transactions that are within the scope of a partnership business, one of the partners therein is fully authorized to bind the partnership. (Civ. Code, sec. 2403, subd. 1.) But assuming that that principle of law is applicable herein, it also is indisputable that either partner possesses authority to revoke or to cancel any executory contract, or transaction that legally might be revoked or canceled by the partnership. “When reasonably necessary or proper in the conduct of the firm business, as it is ordinarily conducted, a partner may modify or rescind a firm contract already made; ...” (47 C. J., p. 847; see, also,
 
 Bradbury
 
 v.
 
 McLendon,
 
 119 Miss. 210 [80 So. 633];
 
 MacCaulay
 
 v.
 
 Palmer,
 
 125 N. Y. 742 [26 N. E. 912];
 
 Harper et al.
 
 v.
 
 McKinnis,
 
 53 Ohio St. 434 [42 N. E. 251]; S
 
 hillito
 
 v.
 
 Sampson,
 
 61 Iowa, 40 [15 N. W. 572].) In Story on Partnership (Gray’s Ed.), page 205, it is said: “ . . . one partner alone may release, or even compound, or compromise a partnership debt. ... A release by one partner certainly binds all the partners ...” And also, in Bates, Law of Partnership, volume I, section 409, the following statement is found: “A partner can give notice of abandonment for the firm, and can consent to the cancellation of a policy of insurance and bind his co-partner thereby . . . ”
 
 (Hillock
 
 v.
 
 Traders Ins. Co.,
 
 54 Mich. 531 [20 N. W. 571].)
 

 It follows that even though it be conceded that on the invitation of one of the parties to the “joint venture” plaintiff lawfully was within the lobby of the theatre, it equally was within the power of the other partner to the “joint venture” at any time to revoke the right or license of plaintiff to be within the said lobby and to order -him to be removed therefrom. And since from the record herein, it affirmatively appears that in ejecting plaintiff from the theatre neither excessive force, nor more force than reasonably was necessary was exerted, it follows that plaintiff had no cause of action against the defendants herein or either of them. In the case of
 
 Nakashima
 
 v.
 
 Takase,
 
 8 Cal. App. (2d) 35, 39 [46 Pac. (2d) 1020], it is said: “The timeworn rule of torts is that a person has a right to use all such force as is reasonably necessary to protect his person or property. Bigelow on Torts, 8th Ed., p. 153.” Also in the case of
 
 Phelps
 
 v.
 
 Arnold,
 
 112 Cal. App. 518, 522 [297 Pac. 31], wherein this rule is discussed, it is said: “ ... in the case of
 
 Walker
 
 v.
 
 Chanslor,
 
 153 Cal. 118 [126 Am. St.
 
 *389
 
 Rep. 61, 17 L. R. A. (N. S.) 455, 94 Pac. 606], . . . many of the authorities, ancient and modern, are therein collated. The rule therein announced is the common-law rule that an owner has the right to forcibly eject trespassers and if the force used is not excessive, the trespasser has no personal action against the owner. The correctness of the ruling has never been questioned and now stands as the accepted law of this jurisdiction. ...”
 
 (Townsend
 
 v.
 
 Briggs,
 
 99 Cal. 481 [34 Pac. 116];
 
 Burnham
 
 v.
 
 Stone,
 
 101 Cal. 164 [35 Pac. 627].)
 

 It becomes unnecessary to discuss either of the several other points that have been presented by the respective parties to the appeal.
 

 The judgment is reversed.